Langan v. Whalen.

---

MARY A. LANGAN ET AL. V. THOMAS WHALEN ET AL.

FILED JANUARY 21, 1903. No. 12,509.

Commissioner's opinion, Department No. 3.

1. **Dedication of Private Property to Public Use:** EVIDENCE. The allegation that private property has been dedicated to a public use, can only be established from declarations or circumstances showing that the owner intended to make the donation in question.

Syllabus by court; catch-words by editor.

**2. Highway: Estoppel: Demand for Damages.** A person is not estopped to deny the existence of a lawful public road by the fact that he demanded damages on account of the taking of his land therefor, which demand was wholly ignored by the public board authorized by law to ascertain such damages.

**3. Intention: Disputed and Ambiguous Circumstances: Jury.** When the intention of a party is to be ascertained from disputed or ambiguous circumstances, the necessary inferences to be drawn are for the determination of the jury.

Error from the district court for Hall county. Action in ejectment. Plea of highway. Tried below before Munn, J. *Reversed.*

*Othman A. Abbott,* for plaintiffs in error.

*Charles G. Ryan, O. M. Quackenbush* and *Leo Cleary,* contra.

Ames, C.

Plaintiff in error Mary Langan owns a tract of land lying within what are now the corporate limits of the village of Wood River. Crossing the tract at about the middle is a strip called by the parties a "turning row"; that is, a strip of unplowed ground lying between plowed fields on each side, and upon which the teams used in cultivating the fields are turned around. Since the beginning of 1882, if not longer, this strip has been used by the public continuously, to some extent, as a roadway, and in May of that year proceedings were begun by the county board for the establishment of a highway including it, but were carried no further than the making of a survey and staking out the road. At that time the plaintiff in error Thomas Langan, the owner of the land, gave to the county clerk, for filing, a claim for compensation in the sum of $200. This claim, however, did not find its way to the commissioners' records and the road was declared established, but in October of the same year the premises were included in the village corporation and the further prosecution of the proceedings was abandoned. Afterwards Langan, having as-

certained that jurisdiction of the matter had passed to the village board, made several ineffectual demands of that body for the payment of the compensation he required, but whether he ever succeeeded in filing a formal demand therefor with the village clerk is not certain. At all events, his wishes in this respect remained unsatisfied and he repeatedly protested to the officials of the village, and to individuals, against the use of the strip as a public road until his damages should be paid. In harmony with this protest, he forbade the village authorities to improve or repair the passageway, and built and maintained for more than ten years a fence along the centre of what would have been the public road as attempted to be established by the county board. In August, 1899, he built a fence across the strip for the purpose of keeping off intruders, and the village authorities tore it down and took possession of the ground as a public highway. The premises are a homestead, and Thomas and his wife, Mary A., began this action in ejectment to recover possession. Upon proof of substantially the above-recited facts, which are not in dispute, the court instructed the jury to return a verdict for the defendant.

This proceeding is for the reversal of a judgment entered upon the verdict. The principal contentions in support of the judgment are, first, that the conduct of Thomas Langan, especially his filing, as it is insisted, of one claim for damages with the county board, and of three others with the village trustees, amounted to a dedication of the ground to the public as a highway. The impression the circumstances make upon our own minds is exactly the contrary. The filing of the claims, if any were filed, shows a willingness on his part that his land should be appropriated for public use, provided and upon condition that he should be compensated therefor as prescribed by the constitution and statutes of the state; but otherwise not. In other words, his state of mind, as indicated by his own conduct, was not that of one who intends to dedicate, in the sense of to donate, give, bestow without compensation, but of one who was persistent in making it known

Langan v. Whalen.

that he did not entertain any such intention or purpose. As is said by the court in *Forbes v. Balenseifer*, 74 Ill., 183: "In all [such] cases it must appear from declarations or convincing circumstances that the owner intended to dedicate the use of the land to the public." Evidence of such intention is, we think, wholly absent from this record. But it is insisted by defendant that by filing his claims for damages the plaintiff, in effect, began an action for the recovery of compensation, and is therefore estopped to deny the existence of the road, under the authority of *Hawver v. City of Omaha*, 52 Nebr., 734. Whether he did file any such claims is a disputed question, which, if material, should have been left to the jury. But the claims, in any event, having been ignored by the public boards, we think the filing of them is immaterial, except as negativing the idea that Langan intended to donate the ground. The constitutional guaranty against the taking or damaging of private property for public use without just compensation, would be of but little practical protection if it were held to be satisfied by the course said to have been followed in this case. The contention of the defendant amounts to saying that a man waives his rights by the very act of demanding them. Doubtless, if a sum as damages, however inadequate, had been assessed and allowed to him in the manner prescribed by law, he would have had to be content with accepting it or prosecuting an appeal. But to say that to deny or ignore his rights altogether deprives him of any suitable remedy at law or in equity for the protection of his possession, would be to annul the constitution.

It is recommended that the judgment of the district court be reversed and a new trial granted.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED.