## STATE FARM MUT. AUTOMOBILE INS. CO. v. JAMES.

### No. 3928.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

E. S. Bock and T. C. Townsend, both of Charleston, W. Va. (Ben Moore, of Charleston, W. Va., and Dillon, Mahan & White, of Fayetteville, W. Va., on the brief), for appellant.

William L. Lee and H. E. Dillon, Jr., both of Fayetteville, W. Va., for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

Aileen James, plaintiff in the District Court, recovered a judgment against State Farm Mutual Automobile Insurance Company on a policy of insurance whereby Blanche Kessler, the owner of an automobile, was insured against the perils arising from the ownership, maintenance or use of the car, including legal liability from accident on account of bodily injury suffered by any person "other than the assured or persons in the same household as the assured or those in the service or employment of the assured." The plaintiff had previously obtained a judgment against Mrs. Kessler for injuries suffered while riding in the car when driven by Mrs. Kessler's daughter-in-law. Execution on this judgment had been returned unsatisfied, and the pending suit was brought to recover under a provision of the policy that in case execution against the assured should be returned unsatisfied because of insolvency in an action brought by an injured party, then an action might be maintained by the injured person against the company for the amount of the judgment not exceeding the amount of the policy.

A number of questions are raised by the company on this appeal, but it is necessary to notice only the contention that the plaintiff was a person "in the same household as the assured," and therefore was excluded from the coverage of the policy by its express terms. In such a case, the injured person stands in the shoes of the assured and is subject to the restrictions and exceptions in the policy. Peeler v. U. S. Casualty Co., 197 N.C. 286, 148 S.E. 261. It is therefore necessary to determine whether Aileen James and Mrs. Kessler were persons in the same household. The evidence shows that they were not related by blood or marriage. Four years before the accident on August 21, 1933, Aileen James entered the home of Mrs. Kessler in the town of Oak Hill, W. Va. The household consisted of eight persons, besides Miss James, that is to say: Mr. and Mrs. Kessler, a son Owen and his wife and child, two daughters, and a colored cook. Miss James became a

boarder in the house, being furnished with room and board for which she made payment in the first three years during which she had regular employment in the town. She then lost her position, but continued to spend about half of her time at Mrs. Kessler's home and about one-half at the home of her parents in the country one mile distant from the town. During this last year she had very little work and paid no board to Mrs. Kessler, but stayed with her without any agreement between them. Sometimes she would help with the household work or go to the store for groceries and occasionally do a little sewing, the last of which was done in June, 1933, when she made three dresses for one of Mrs. Kessler's daughters. The services that she performed were rendered of her own accord, and she came to and went from the home at will without any attempt on the part of Mrs. Kessler to exercise control over her. While she lived at the home, she slept with one of Mrs. Kessler's daughters, ate her meals with the family, went to church with them and rode with them in the automobile, and associated with them generally. On the day of the accident she had helped Mrs. Kessler prepare some refreshments to be served to members of the church circle that evening.

Upon this evidence, the company moved for a directed verdict in its favor, but it was refused. We are of the opinion that it should have been granted, for it is clear that Miss James answered the description of "a person in the same household as Mrs. Kessler." The phrase is not limited to persons related by blood or marriage, nor has it the same meaning. The term "household" is customarily used to mean a number of persons who dwell together as a family. It was used in this sense by the Supreme Court in Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L. Ed. 825, and in the automobile insurance policies considered in the decisions cited below. During her residence at the Kessler home, Miss James was treated in all respects as a member of the family group, living on the most intimate terms with the other members who were connected by ties of blood or marriage, sharing in their daily tasks and enjoying the social intercourse of the domestic circle. She was undoubtedly a member of the household in the ordinary sense of the word.

The decisions upon automobile liability and indemnity policies cited below are in harmony with this result. Clauses in these policies relating to members of the household of the assured have been used to provide for coverage against theft except by any person in the assured's household, as in Rydstrom v. Queen Insurance Co., 137 Md. 349, 112 A. 586, 14 A.L.R. 212, Home Ins. Co. v. Pettit, 225 Ala. 487, 143 So. 839; or for coverage in the event the car is driven at the time of an accident by any person with the permission of the assured or any adult member of the assured's household, as in United States F. & G. Co. v. Hall, 237 Ky. 393, 35 S.W.(2d) 550; Andrews v. Commercial Cas. Ins. Co., 128 Neb. 496, 259 N.W. 653; Ocean Accident & Guar. Co. v. Schmidt (C.C.A.) 46 F.(2d) 269; Indemnity Ins. Co. v. Sanders, 169 Okl. 378, 36 P.(2d) 271; or as in the case at bar, for coverage of legal liability of the assured for personal injury to any person other than the assured or persons in the same household as the assured. Cartier v. Casualty Co., 84 N.H. 526, 153 A. 6; Automobile Underwriters' Ins. Co. v. Long (Tex.Civ.App.) 39 S.W.(2d) 1102, affirmed (Tex.Com.App.) 63 S.W.(2d) 356. Compare Umbarger v. State Farm Mutual Automobile Ins. Co., 218 Iowa, 203, 254 N.W. 87.

If in accord with the general rule of interpretation, the meaning of the word "household" in the policy under consideration is determined in the light of the situation in which it was used, there can be no doubt that it was intended to embrace such a person as the plaintiff in this case. Obviously the exception was intended to restrict the company's liability, and the specific purpose was to safeguard the company against the natural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle. This purpose, manifest to any reasonable person, was well described in Cartier v. Casualty Co., supra, 84 N.H. 526, page 528, 153 A. 6, 7, as follows: "In considering the purpose of the excepting clause of the policy it is clear enough that it was meant to avoid the insurer's liability to indemnify for injuries to members of the insured's household, whether or not he was its head. The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over

that for accidents to others. Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or nonresistance blame for hurting a member of his household than for doing harms to others."

Reversed.